OPINION OF THE COURT
Joseph R. Cannizzaro, J.
Introduction:
This CPLR article 78 proceeding concerns General Business Law § 198-a, known as the “New Car Lemon Law.” Petitioners, which are manufacturers of new motor vehicles sold in New York State, commenced this proceeding to enjoin respondents from using materials, including award forms promulgated for New Car Lemon Law arbitrations, which proscribe an allegedly incorrect legal standard. Respondent Eliot Spitzer, the Attorney General of New York State, who is responsible for the supervision and operation of the statewide New Car Lemon Law arbitration program, and respondent the New York State Dispute Resolution Association, which is the independent arbitration firm that conducts the arbitrations, oppose the petition and seek a dismissal of the proceeding on grounds that petitioners are not entitled to the relief they seek. The Attorney General had also asserted as an affirmative defense that the proceeding was barred by the applicable four-month statute of limitations set forth in CPLR 217. However, the Attorney General withdrew this defense during the oral argument conducted by the court on August 25, 2004 in order to allow the issues in this proceeding to be determined.
*230 History/Background:
Under the New Car Lemon Law, a consumer who purchases a new motor vehicle that is seriously defective is entitled to either bring an action against the manufacturer of the vehicle within four years of the date of original delivery of the motor vehicle to the consumer or to arbitrate his or her dispute in accordance with the arbitration program established pursuant to regulations promulgated by the New York State Attorney General. (See General Business Law § 198-a Q], [k]; 13 NYCRR, ch VIII, part 300.) More particularly, the New Car Lemon Law states first that:
“If a new motor vehicle which is sold and registered in this state does not conform to all express warranties during the first eighteen thousand miles of operation or during the period of two years following the date of original delivery of the motor vehicle to such consumer, whichever is the earlier date, the consumer shall during such period report the nonconformity, defect or condition to the manufacturer, its agent or its authorized dealer. If the notification is received by the manufacturer’s agent or authorized dealer, the agent or dealer shall within seven days forward written notice thereof to the manufacturer by certified mail, return receipt requested, and shall include in such notice a statement indicating whether or not such repairs have been undertaken. The manufacturer, its agent or its authorized dealer shall correct said nonconformity, defect or condition at no charge to the consumer, notwithstanding the fact that such repairs are made after the expiration of such period of operation or such two year period.” (See General Business Law § 198-a [b] [1].)
The New Car Lemon Law states further in relevant part that:
“If, within the period specified in subdivision (b) of this section, the manufacturer or its agents or authorized dealers are unable to repair or correct any defect or condition which substantially impairs the value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer, at the option of the consumer, shall replace the motor vehicle with a comparable motor vehicle, or accept return of the vehicle from the consumer and refund to the consumer the full purchase price or, if applicable, the lease price and any trade-in allowance plus *231 fees and charges . . . (See General Business Law § 198-a [c] [1] [emphasis added].)
Lastly, as relevant here, the New Car Lemon Law states that:
“It shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties, if:
“(1) the same nonconformity, defect or condition has been subject to repair four or more times by the manufacturer or its agents or authorized dealers within the first eighteen thousand miles of operation or during the period of two years following the date of original delivery of the motor vehicle to a consumer, whichever is the earlier date, but such nonconformity, defect or condition continues to exist; or
“(2) the vehicle is out of service by reason of repair of one or more nonconformities, defects or conditions for a cumulative total of thirty or more calendar days during either period, whichever is the earlier date.” (See General Business Law § 198-a [d] [1], [2] [emphasis added].)
This proceeding concerns the presumption set forth in General Business Law § 198-a (d) (1) (hereinafter sometimes referred to as the repair presumption). At issue in particular is the interpretation of General Business Law § 198-a (d) (1), and more specifically, the language “has been subject to repair four or more times” and “but such nonconformity, defect or condition continues to exist.” From 1987, when the New Car Lemon Law arbitration program began, until December 31, 2002, the Attorney General states that he interpreted General Business Law § 198-a (d) (1) as requiring that a consumer had to allege and establish that the defect or condition complained of continued to exist at the time of the arbitration hearing. However, the Attorney General contends that this interpretation is simply wrong and that the arbitration program has been operating for the last 16 years using an incorrect repair presumption standard.
More specifically, the Attorney General contends that he was prompted to review existing policies with respect to the presumptions set forth in both the Used and New Car Lemon Laws because of a decision rendered by the Appellate Division, Second Department, in Matter of Bay Ridge Toyota v Lyons (272 AD2d 397 [2d Dept 2000]). In Bay Ridge, the Appellate Division affirmed the trial court’s denial of the car dealer’s request to *232 vacate the consumer’s Lemon Law award. The focus of the matter was the 15-day “out of service” presumption provision contained in the Used Car Lemon Law that is similar to the 30-day “out of service” presumption provision contained in the New Car Lemon Law and which does not contain the language “but such nonconformity, defect or condition continues to exist.” The Appellate Division stated that the consumer was entitled to the award because the vehicle was out of service due to repairs or malfunction for 15 or more days and that this presumption “was not contingent upon whether the car was presently operable.” (Bay Ridge v Lyons, supra at 397.)
The Attorney General contends that, because of Bay Ridge, he concluded in November 2002 that General Business Law § 198-a (d) (1) only requires that the defect or condition complained of exist, at a minimum, following the fourth repair attempt and not that the defect had to continue to exist until the time of the hearing in order for the consumer to be entitled to the presumption. In other words, the Attorney General contends that four unsuccessful repair attempts is sufficient to trigger the repair presumption. The Attorney General contends further that the consumer’s entitlement to the presumption does not extinguish simply because of the fact that the manufacturer was given one more repair opportunity or 20 more repair opportunities and the defect may have been fixed by the time the arbitration hearing actually occurred. Rather, the Attorney General contends that, under such circumstances, the manufacturer is given the opportunity to rebut the repair presumption by showing that four repair opportunities were not a reasonable number of attempts for the defect complained of and that however many more repair opportunities were given to the manufacturer after the fourth repair attempt failed which resulted in fixing the defect was a reasonable number of attempts.
It is undisputed that the Attorney General’s new interpretation of General Business Law § 198-a (d) (1) became effective as of January 1, 2003. It is also undisputed that the Attorney General had issued a memorandum to Lemon Law arbitrators on November 23, 2002, which was last revised on March 25, 2003, that noticed the change in policy and how it applied to both the Used and New Car Lemon Laws. In regard to the New Car Lemon Law specifically, arbitrators are currently instructed that they are not required to find that a defect continues to exist at the time of the arbitration hearing to find that a consumer *233 is entitled to relief under the Lemon Law using either the repair presumption or the 30-day out of service presumption. Rather, arbitrators are advised that a consumer may be entitled to relief, provided that all other statutory requirements are met, if within the first 18,000 miles or two years the consumer’s vehicle was out of service for 30 days, or was subject to four unsuccessful repair attempts, notwithstanding that the defect was subsequently repaired.
Petitioners contend that the Attorney General’s new interpretation has resulted in consumers obtaining arbitration awards under General Business Law § 198-a (d) (1), even though their vehicles may have been repaired at the time of their arbitration hearings. Petitioners, however, admit that they did not directly challenge the Attorney General’s new interpretation of General Business Law § 198-a (d) (1) in 2002 or 2003. Instead, petitioners state that they chose to commence CPLR article 75 special proceedings to vacate the individual arbitration awards won by consumers on the basis that the arbitrators misapplied the law and that the old interpretation is the correct interpretation of General Business Law § 198-a (d) (1). Petitioners state that they contended in each article 75 proceeding that the plain language of General Business Law § 198-a (d) (1) required a finding that the problem remained unrepaired and continued to exist at the time of the arbitration hearing.
It is undisputed that in four article 75 proceedings (hereinafter referred to as the test cases), the Attorney General’s new interpretation of General Business Law § 198-a (d) (1) was rejected as unsupported. (See General Motors Corp. v Jacobs, Sup Ct, Albany County, Sept. 26, 2003, Bernard J. Malone, Jr., J., Index No. 5636-03; Saturn Corp. v Guidice, Sup Ct, Albany County, Mar. 11, 2004, Louis C. Benza, J., Index No. 7146-03; DaimlerChrysler Corp. v Catherman, 3 Misc 3d 1110[A], 2004 NY Slip Op 50546[U] [Sup Ct, Albany County, Louis C. Benza, J.]; DaimlerChrysler Corp. v Arvonio, Sup Ct, Albany County, July 6, 2004, Louis C. Benza, J., Index No. 2500-04.) Rather, in looking at the plain language of General Business Law § 198-a (d) (1), these courts required a defect to exist at the time of the hearing if a consumer was to recover using this presumption. In short, the arbitration awards in the test cases were vacated on grounds that the arbitrator did not apply the correct legal standard.
The Attorney General, however, points out that it was never a party to the test cases. In addition, the Attorney General points *234 out that, out of the four test cases, one consumer defaulted and the petition was unopposed, two other petitions were opposed only by consumers who were not represented by counsel, and in the fourth matter, the attorneys for the consumer failed altogether to address the issues raised in this proceeding. As a result, the Attorney General states that in five other similar pending CPLR article 75 proceedings brought by petitioners, he has requested permission to appear as amicus curiae in order to provide support for his position and demonstrate the appropriateness of his new interpretation of General Business Law § 198-a (d) (1). The Attorney General contends that because petitioners are now actually being faced with serious opposition to their interpretation of General Business Law § 198-a (d) (1) and because they believe they can rely on the unchallenged holdings of the four test cases, as well as dicta from Kucher v DaimlerChrysler Corp. (194 Misc 2d 688 [Civ Ct, Queens County 2003]), a decision from the New York City Civil Court that in an advisory opinion interpreted General Business Law § 198-a (d) (1) in the same manner as the test cases, petitioners commenced the instant article 78 proceeding to enjoin respondents from operating the arbitration program in a manner inconsistent with the test cases and Kucher. The Attorney General contends, however, that upon the issue being fully addressed by the court for the first time, it will be clear that his new interpretation of General Business Law § 198-a (d) (1) is the correct interpretation and that petitioners are not entitled to the injunctive relief they seek.
Petitioners, on the other hand, contend that the only reason they were compelled to commence the instant proceeding is because the Attorney General has refused to follow thé test cases and Kucher which they contend have correctly interpreted General Business Law § 198-a (d) (1), and to operate the arbitration program accordingly. More particularly, petitioners contend that the Attorney General’s refusal to change the arbitration materials and decision forms and to retrain the arbitrators to follow the legal standard for the repair presumption set forth in the test cases and Kucher raises the question of whether the Attorney General “failed to perform a duty enjoined upon it by law.” (See CPLR 7803 [1].) Petitioners contend that the Attorney General is legally bound by the test cases under the principles of stare decisis and res judicata and, therefore, that he must administer the New Car Lemon Law in conformity with the statutory interpretation already utilized by the courts. *235 At best, petitioners contend that the only issue before this court is whether the Attorney General is legally bound by the test cases. In fact, petitioners contend that this court need not even reach the issue of whether the Attorney General’s new interpretation of the repair presumption is the correct interpretation. However, petitioners contend that to the extent that the court “feels compelled to revisit” the issue of the correct interpretation of General Business Law § 198-a (d) (1), a review of the matter shows that the old interpretation was correct and that the repair presumption requires proof of an existing defect at the time of a hearing or trial in order for a consumer to recover under the New Car Lemon Law using this presumption.
The Court’s Findings:
At the outset, the court finds no merit to petitioners’ contentions that the doctrines of stare decisis and res judicata required the Attorney General to return to the old interpretation of the repair presumption and preclude this court’s consideration of the issue of the proper interpretation of General Business Law § 198-a (d) (1). First, in regard to res judicata and more appropriately, collateral estoppel, such doctrines are designed to put an end to a matter once duly decided. Each doctrine has a distinctive application. Res judicata, or claim preclusion, is invoked when parties seek to relitigate entire causes of action between them and applies to matters which were actually litigated or could have been litigated in the earlier action. Collateral estoppel, or issue preclusion, is invoked when the cause of action in the second proceeding is different from that in the first and applies to a prior determination of an issue which was actually and necessarily decided in the earlier case. It is confined to the point actually determined and applies only to issues which were actually litigated, not to those which could have been litigated. (See O’Connor v G & R Packing Co., 53 NY2d 278 [1981]; Malloy v Trombley, 50 NY2d 46 [1980]; Reilly v Reid, 45 NY2d 24 [1978]; Manitou Sand & Gravel Co. v Town of Ogden, 81 AD2d 1019 [4th Dept 1981], revd 55 NY2d 790 [1981].)
In order for the doctrine of res judicata to apply, the party to be precluded in the current action must have been a party to the prior action where the claim at issue was litigated or could have been litigated. In order for the doctrine of collateral estoppel to apply, two requirements must be satisfied: the party seeking the benefit of the doctrine must prove that the identical issue was decided in the prior action and is decisive in the current *236 action, and that the party to be precluded from relitigating the issue had a full and fair opportunity to contest the prior determination. (New York State Dam Ltd. Partnership v Niagara Mohawk Power Corp., 222 AD2d 792 [3d Dept 1995].) Here, since the Attorney General was not a party to either the test cases or Kucher and never had the opportunity to present his arguments concerning the proper interpretation of General Business Law § 198-a (d) (1) to the court until now, none of the requirements for either res judicata or collateral estoppel to apply have been satisfied to preclude this court from addressing the issue of the proper interpretation of the repair presumption within the context of the New Car Lemon Law.
In regard to stare decisis, “[w]hether a judicial construction of a statute is a binding precedent depends on the court by which it was rendered and the rank of the tribunal in the judicial hierarchy.” (McKinney’s Cons Law of NY, Book 1, Statutes § 72 [b].) More specifically, as is relevant here, “[a] decision of a court of equal or inferior jurisdiction is not necessarily controlling, though entitled to respectful consideration.” (See McKinney’s Cons Laws of NY, Book 1, Statutes § 72, at 143-144.) Thus, contrary to petitioners’ assertions, the test cases and Kucher are not binding upon this court in rendering a decision concerning the proper interpretation of the repair presumption since the test cases were decided by courts of jurisdiction equal to this court and Kucher was decided by a court of inferior jurisdiction.
Nevertheless, this court has respectfully considered the test cases and Kucher in rendering its decision here. The court finds it significant that, in the test cases and Kucher, the courts did not have the opportunity to hear the arguments of the Attorney General in support of his new interpretation. This court has also considered other case law that concerns this issue which includes, for example, Bouchard v Savoca (129 Misc 2d 506 [Sup Ct, Albany County 1985]), a case completely ignored by petitioners where the court construed a similar repair presumption contained in the Used Car Lemon Law and found that the fact that the car was fixed and in “superior condition” (at 507) at the time of trial did not deprive the consumer of the repair presumption or preclude recovery against the seller.
Turning to the real issue at hand, there is no dispute that the New Car Lemon Law, which was enacted in 1983, is a remedial statute. (Matter of Hynson [American Motors Sales Corp.], 164 AD2d 41, 48 [2d Dept 1990]; see L 1983, ch 444.) In the *237 Governor’s Memorandum in Support dated July 15, 1983, which accompanied the approval of the New Car Lemon Law, the purpose of the law was to “provide remedies to consumers for new motor vehicles that do not conform to all applicable express warranties.” (See 1983 McKinney’s Session Laws of NY, at 2772.) Therefore, as a remedial statute, the New Car Lemon Law must be liberally construed in favor of those the statute was enacted to protect — new car consumers. (See Motor Veh. Mfrs. Assn, of U.S. v State of New York, 75 NY2d 175, 179-180 [1990]; Levine v American Motors Corp., 134 Mise 2d 1088, 1090 [Sup Ct, Monroe County 1987]; see also White v County of Cortland, 97 NY2d 336, 339 [2002]; Jensen v General Elec. Co., 82 NY2d 77, 83 [1993].)
In so construing the statute, the court finds, as the parties have found, that this proceeding presents a straightforward question of statutory interpretation and analysis. In such circumstances, the court need not accord any deference to either the Attorney General’s old or new interpretation of the repair presumption and is free to ascertain the proper interpretation of the repair presumption from the statutory language and legislative intent. (See e.g. Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98 [1997]; Matter of Toys “R” Us v Silva, 89 NY2d 411 [1996]; Matter of Gruber, 89 NY2d 225 [1996]; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451 [1980].) The court, therefore, looks first to the language of the repair presumption itself to give effect to the plain meaning thereof. (See Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479 [2001].)
In this endeavor, it is clear to the court that the New Car Lemon Law permits a consumer who has purchased a vehicle that has any defect or condition during the first 18,000 miles of operation or during the two years following delivery of the vehicle to the consumer, which substantially impairs the value of the vehicle to the consumer, to obtain either a full refund of the purchase price or a replacement vehicle if the vehicle cannot be repaired after “a reasonable number of attempts.” (See General Business Law § 198-a [b] [1]; [c] [1].) The statute then clearly defines in both the repair presumption and the 30-day presumption what constitutes a reasonable number of repair attempts. (See General Business Law § 198-a [d] [1], [2].) In regard to the repair presumption, a reasonable number of repair attempts is when the same defect or condition occurring within the first *238 18,000 miles or two years of ownership has been subject to at least four repair attempts and the defect continues to exist. (See General Business Law § 198-a [d] [1].) The court recognizes further that the repair presumption clearly contemplates the situation where a consumer has allowed his vehicle to be subject to more than four repair attempts and the defect still exists, hence the language “four or more times.” (See General Business Law § 198-a [d] [1].) If the consumer’s circumstances satisfy this definition, the consumer is entitled to a presumption that a reasonable number of repair attempts has occurred which then entitles him or her to a recovery under the New Car Lemon Law unless the presumption is rebutted or the manufacturer can successfully demonstrate one of the statutorily provided affirmative defenses. (See General Business Law § 198-a [c] [3].) This is the plain meaning of the repair presumption within the context of the New Car Lemon Law.
Petitioners assert that the “four or more” language coupled with the language “but such nonconformity, defect or condition continues to exist” necessarily means that no matter how many repair attempts the consumer affords the manufacturer, the defect or condition must continue to exist not only after the last repair attempt that was afforded to the manufacturer, but also until the time of the arbitration hearing or trial. However, the court finds that petitioners’ interpretation of the repair presumption erroneously focuses on whether a consumer is entitled to recover under the New Car Lemon Law and not on whether the consumer is entitled to a presumption that permits the consumer to make a Lemon Law claim — a presumption which can be rebutted. In addition, the court finds that petitioners’ interpretation completely ignores the purpose of the statute which is to impose an obligation on the manufacturer to repair a defective vehicle within a reasonable time, thereby giving a consumer a remedy if the manufacturer does not satisfy this obligation.
If petitioners’ interpretation prevailed, it would induce consumers to stop trying to repair their vehicles after the fourth unsuccessful repair attempt and either drive defective vehicles or let them sit idle in order to be entitled to the repair presumption and to recover at the time of the hearing or trial since affording the manufacturer even one additional repair attempt could extinguish the presumption and preclude recovery if the vehicle happened to be repaired by that time. This is something few consumers can afford to do. Nor is this a reasonable result. *239 On the other hand, if consumers pursue the repair of their vehicles, petitioners’ interpretation would mean that whether it took five repair attempts or 25 repair attempts, the consumer could never reach a “reasonable” number of repair attempts and could never be entitled to the repair presumption or recovery if the defect happens to be repaired by the time the arbitration hearing or trial occurs. This result simply puts the burden on the consumers to keep giving the manufacturer opportunities to repair their vehicles without any benefit to the consumer or any consequences to the manufacturer.
It is therefore clear to the court that the repair presumption arises when at least four repair attempts have occurred and the defect continues to exist and it is not extinguished simply because the consumer continues to permit the manufacturer or any other repair garage additional attempts to repair the vehicle and the vehicle is ultimately repaired before a hearing or trial can occur. In fact, the court finds that there is absolutely nothing in the language of the repair presumption which makes the entitlement to the presumption contingent upon the condition of the vehicle at the time of the hearing or trial. (See e.g. Bouchard v Savoca, supra.) Indeed, the court agrees with the Attorney General that reading the phrase “but . . . continues to exist” in its immediate context makes it clear that it has nothing to do with the condition of the vehicle at the time of hearing or trial. The phrase “but . . . continues to exist” refers to and modifies the number of repair attempts which are reasonable for a consumer to undertake before he or she may be eligible for relief under the New Car Lemon Law. The phrase means just what it says: the defect must continue to exist, at a minimum, after the fourth repair attempt. The phrase clearly intends to exclude from Lemon Law relief defects that are fixed in four or fewer attempts. Without the words “but such nonconformity, defect or condition continues to exist,” four repair attempts would be sufficient to trigger a presumption of unreasonableness even if the vehicle was repaired on the fourth attempt.
The court also fails to find that it is stated elsewhere in the New Car Lemon Law that the defect complained of under the repair presumption must exist at the time of the arbitration hearing or trial. To require that the defect exist at the time of the hearing or trial would be tantamount to adding language to the statute and effectively amending it, which the court cannot do. (See Statutes §§ 73, 74.) In short, the court finds that the *240 old interpretation of the repair presumption, that a defect must exist until the time of an arbitration hearing or trial, which is petitioners’ interpretation, is contrary to the statute’s plain language and purpose. Rather, the Attorney General’s new interpretation of the repair presumption is correct and clearly supported by the statute’s plain language and purpose.
At this point, resort to any further means of statutory interpretation is unnecessary and the court could end its resolution of the matter right here since the repair presumption is free from ambiguity and expresses, plainly, clearly and distinctly the legislative intent of protecting new car consumers who purchase “lemon” vehicles and cannot get them repaired after four unsuccessful attempts. (See Statutes § 76.) However, the court finds that the canons of construction, the legislative history and the circumstances surrounding the statute’s passage all buttress the Attorney General’s new interpretation of the repair presumption. (See Statutes § 124; Giuliani v Hevesi, 90 NY2d 27, 39 [1997]; Matter of Auerbach v Board of Educ., 86 NY2d 198, 204 [1995].)
In particular, in looking at the statute as a whole and harmonizing all parts with each other and the general intent of the statute, as well as considering the object, spirit and purpose of statute and the harm to consumers which is sought to be remedied as the canons on construction require, the court finds it significant that it is beyond dispute that the 30-day out of service presumption, which is not at issue in this case, is available to a consumer whose vehicle has been out of service for a total of 30 days during the covered period regardless of whether the vehicle’s defect is repaired by the time of the hearing or trial. (See e.g., Bay Ridge v Lyons, supra; General Business Law § 198-a [d] [2].) The court notes that similar to the repair presumption, the 30-day presumption states: “thirty or more” days out of service, again clearly only stating a minimum to define a “reasonable number of attempts” at repair. However, it is entirely conceivable that a vehicle out of service could be repaired on the 31st day or the 40th day. Following petitioners’ position in this proceeding to its conclusion, the 30-day presumption should be extinguished if the vehicle is repaired by the time of the hearing or trial. This result of course would not impose on the manufacturer a requirement to repair the vehicle within a defined reasonable time and thus clearly does not offer a consumer a real remedy if it does not. The court finds that the same empty remedy results if petitioners’ position is followed under the repair presumption.
*241 Petitioners, however, urge that because the 30-day presumption does not contain the “but. . . continues to exist” language, it makes sense not to require that the defect exist at the time of hearing or trial under this presumption. The court finds, however, that the absence of this language is of no moment since to have added the “but . . . continues to exist” language to the 30-day presumption would have been superfluous. If a car is out of service, it is clear that the defect continues to exist as long as the car is out of service. Thus, the court finds that the absence of this language in the 30-day presumption does not provide a basis to interpret each presumption provided under the New Car Lemon Law so differently. It simply makes no sense to the court to find that the repair presumption requires that the vehicle must still be defective at the time of a hearing or trial and that the 30-day presumption does not. (See Statutes §§ 95-98, 143, 145.)
Moving on, in looking at the legislative history of the New Car Lemon Law and the circumstances surrounding its enactment, the court cannot find any basis whatsoever for petitioners’ and the Attorney General’s old interpretation of the repair presumption, but finds solid support for the Attorney General’s new interpretation. It is clear that the statute was intended to address widespread consumer frustration in dealing with defective motor vehicles by providing clear and prompt standards for redress to consumers who purchase defective vehicles that cannot be repaired within a reasonable time. According to Senator Bruno, one of the statute’s sponsors, the statute contained “clearly expressed guidelines to establish the maximum number of repair attempts which can be required prior to a refund or replacement of the car.” (Mem of Senator Joseph L. Bruno, 1983 NY Legis Ann, at 200.) In addition, as described by then Mayor Edward Koch in his letter in support of the legislation:
“Most importantly, the bill clearly defines when a manufacturer must refund the purchase price or replace a ‘lemon.’ This will greatly assist the consumer who has purchased an automobile with a defect so substantial and persistent that it cannot be repaired within a reasonable period of time. By clearly defining what constitutes a reasonable attempt at repair, the bill provides clear rights for consumers victimized by the purchase of chronically defective automobiles.” (Letter of Mayor Edward I. Koch in Support, June 17, 1983, Bill Jacket, L 1983, ch 444 [Bill Jacket], at 31-32; see also Mem of Sena *242 tor Joseph Bruno and Assemblyman Arthur J. Kremer in Support [Sponsors’ Mem], Bill Jacket, at 63 [“This bill contains clearly expressed guidelines in determining when a ‘reasonable number’ of repair attempts has been surpassed”]; Letter of New York Public Interest Research Group, Inc. in Support, July 14, 1983, Bill Jacket, at 15 [“This legislation considerably improves current law by: (a) providing a bright line test which triggers consumer rights . . . This bill provides that a manufacturer will have to replace or refund the value of the car if within the earlier of the first 18,000 miles of operation or two years the car is out of service for 30 or more days or repaired four or more times for the same nonconformity, defect or condition”].)
The statutory presumptions regarding what constitutes a reasonable number of repair attempts were also specifically intended to ensure that consumers not be subjected to an endless round of repair attempts. As stated by Assemblyman Kremer, the other sponsor of the statute: “When a new automobile is purchased, a consumer should not be subjected to being out of service for unreasonable periods of time or under continuous repair without the defect or condition rectified.” (Mem of Assemblyman Arthur J. Kremer [Kremer Mem], June 23, 1983, Bill Jacket, at 20; see also Statement of NY Auto Assn, Apr. 27, 1983, Bill Jacket, at 38 [“If enacted, it would statutorily define the conditions that differentiate a ‘lemon’ automobile and empower consumers to discontinue the endless pursuit of satisfactory repairs once those conditions are met”].)
Both supporters and opponents of the New Car Lemon Law recognized that the clear-cut guidelines established by the statute would permit consumers to obtain a refund or replacement vehicle after four unsuccessful repair attempts. (See, e.g., Kremer Mem, Bill Jacket, at 19 [“If. . . the defect or nonconformity is not corrected after four attempts . . . the consumer would, at his or her option, be entitled to replacement of such automobile or receive a refund of the purchase price . . . ”]; Mem in Opposition of NY Dept of Commerce, July 13, 1983, Bill Jacket, at 44 [the bill would “require the manufacturer of an automobile to replace or refund the price of a ‘lemon’ automobile if not repaired after four attempts”]; Mem in Support of NY Consumer Protection Bd, July 5, 1983, Bill Jacket, at 51 [owners of new cars would be entitled to a refund or replacement vehicle if “the manufacturer, its agent or authorized dealer has not *243 repaired the defect after either four attempts or 30 cumulative days out of service”]; Mem in Opposition of NY Chamber of Commerce, June 30, 1983, Bill Jacket, at 64 [“This bill would require an automobile manufacturer to replace or repurchase a vehicle if the ‘same nonconformity’ has been subject to repair four times . . . ”]; Mem in Support, Bill Jacket, at 68 [“This bill would require motor vehicle manufacturers to replace or give a refund for a vehicle where that vehicle has defects which are not remedied after four attempts . . . ”].) Even the Motor Vehicle Association of America (MVAA), which opposed the bill, recognized that Lemon Law remedies attach after the fourth unsuccessful repair attempt and therefore argued in its memorandum in opposition to the legislation that it was “essential that the manufacturer be notified of an alleged ‘lemon car’ prior to the fourth repair attempt of the same defect.” (Mem in Opposition of MVAA, June 20, 1983, Bill Jacket, at 72.)
In view of the legislative history, the court finds that petitioners’ interpretation of the repair presumption would undermine the statute’s central purpose by muddying the presumption in regard to what constitutes a “reasonable number of attempts.” In other words, petitioners’ interpretation would take some of the guidelines out of the guidelines. The court cannot countenance such an interpretation of the repair presumption since it simply penalizes consumers by allowing manufacturers unlimited additional opportunities to repair a vehicle after a reasonable number of attempts — four attempts — have failed.
Once again, although the court need go no further, the court is compelled to also recognize that petitioners’ interpretation of the repair presumption also conflicts with judicial decisions construing comparable repair presumptions in Lemon Laws from other states such as Connecticut, Vermont, New Jersey, Delaware, Wisconsin and Ohio. The court could repeat verbatim the demonstration made by the Attorney General which shows that his new interpretation of New York’s repair presumption is the same interpretation utilized by these states’ courts when they interpreted very similar or identical language contained in their states’ respective repair presumptions. However, for the sake of brevity, the court finds it sufficient to state that there is ample support in the decisions from other state courts for this court’s determination that the Attorney General’s new interpretation of General Business Law § 198-a (d) (1) is correct. (See e.g. Conn Gen Stat Ann § 42-179 [e], and General Motors Corp. v Garito, 1997 WL 8-04876,1997 Conn Super LEXIS 3413 [Conn *244 Super Ct, Dec. 11, 1997]; Vt Stat Ann, tit 9, § 4172 [g], and Muzzy v Chevrolet Div., Gen. Motors Corp., 153 Vt 179, 188-189, 571 A2d 609, 615 [Vt Sup Ct 1989]; NJ Stat Ann § 56:12-33 [a], and DiVigenze v Chrysler Corp., 345 NJ Super 314, 785 A2d 37 [NJ Super Ct, App Div 2001]; Del Code Ann, tit 6, § 5004 [a], and Jackson v Hyundai Motor Am., 1997 WL 119794, 1997 US Dist LEXIS 2741 [ED Pa, Mar. 6, 1997]; Wis Stat Ann § 218.0171
[h], and Regal v General Motors Corp., 266 Wis 2d 1060, 668 NW2d 562 [2003] [table; text at 2003 WL 21537821, *3, 2003 Wis App LEXIS 634, *13-14 (Wis Ct App, July 9, 2003)]; Ohio Rev Code Ann § 1345.73, and Reddin v Toyota Motor Distribs., Inc., 1991 WL 21522, 1991 Ohio App LEXIS 712 [Ohio Ct App, Feb. 22, 1991].)
Finally, the court is compelled to reiterate that petitioners have not been stripped of their defenses to New Car Lemon Law claims premised on the repair presumption simply because this court finds that the repair presumption does not require that the defect complained of exist at the time of an arbitration hearing or trial in order for the consumer to be entitled to the presumption. As noted above, recovery is precluded by a consumer if a manufacturer can demonstrate as an affirmative defense that (1) the nonconformity, defect or condition does not substantially impair the value of the vehicle to the consumer, or
(2) the nonconformity, defect or condition is the result of abuse, neglect or unauthorized modifications or alterations of the motor vehicle. (See General Business Law § 198-a [c] [3].) The court finds it significant that the fact that a vehicle may be repaired by the time of a hearing or trial is not an affirmative defense statutorily provided to manufacturers.
More importantly, manufacturers also have the right to rebut the repair presumption by showing that four repair attempts were not reasonable under the circumstances and that whatever additional repair attempts were necessary to repair the defect were reasonable. In fact, in the memorandum sent by the Attorney General to Lemon Law arbitrators concerning his new interpretation of the repair presumption for both the New and Used Car Lemon Laws, the Attorney General stated that:
“In the event a manufacturer, dealer or consumer successfully rebuts the statutory presumption (i.e. in a particular case you determine that 4 attempts/30 days down time for a new vehicle, or 3 attempts/15 days for a used vehicle, are not reasonable under the circumstances, but rather more or *245 fewer attempts or days out are reasonable), the appropriate decision form on behalf of the manufacturers, dealer or consumer should be used with the reason indicated in the Arbitrator’s Findings under ‘other.’ ” (Emphasis added.)
Thus, it is clear that arbitrators are required to find for the manufacturers and not the consumer, if they successfully rebut the repair presumption. Although petitioners complain that the arbitrator’s decision form does not make it clear that the manufacturer is entitled to rebut the repair presumption, there is no dispute that arbitrators are instructed concerning this right. In addition, the court cannot pass on the sufficiency of decision form to be used in favor of the manufacturer since the petitioners have only provided the arbitrator’s decision form for when a consumer is entitled to a refund.
Conclusion:
The parties agree that arbitration hearings occur on average about three months after a Lemon Law arbitration claim is made and that a trial could occur any number of months or years after a Lemon Law action is commenced. In light of such realties and because the court finds that it is contrary to the plain language of the New Car Lemon Law, its extensive legislative history and persuasive authority both in this state and in other states construing comparable Lemon Laws, to require that a defect in a new car exist until the time of an arbitration hearing or trial, the court finds that the Attorney General’s new interpretation of General Business Law § 198-a (d) (1) is correct. A consumer is only required to show that his or her vehicle has been subjected to at least four repair attempts during the covered period and that the defect continued to exist after the fourth attempt in order for the consumer to be entitled to a presumption that a reasonable number of repair attempts have been undertaken to conform a vehicle to applicable express warranties and therefore to make a Lemon Law claim.
Accordingly, because petitioners have not succeeded in demonstrating the merits of their interpretation of the repair presumption, the petition is dismissed and the relief requested therein is in all respects denied.