Matter of R.M. v C.M. (2024 NY Slip Op 01545)

Matter of R.M. v C.M.

2024 NY Slip Op 01545

Decided on March 20, 2024

Appellate Division, Second Department

Barros, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 20, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
BETSY BARROS
DEBORAH A. DOWLING
LILLIAN WAN, JJ.

2023-05418
 (Index No. 434/23)

[*1]In the Matter of R. M., petitioner, 
v
C. M., respondent- respondent; Letitia James, etc., intervenor-appellant.

APPEAL by the intervenor, Letitia James, in a proceeding for an extreme risk protection order pursuant to CPLR article 63-A, from an order and judgment (one paper) of the Supreme Court (Craig Stephen Brown, J.), dated April 4, 2023, and entered in Orange County. The order and judgment granted the respondent's motion for a declaration that CPLR article 63-A is unconstitutional, declared that CPLR article 63-A is unconstitutional, and dismissed the petition.

Letitia James, Attorney General, New York, NY (Barbara D. Underwood, Ester Murdukhayeva, and Sarah Coco of counsel), intervenor-appellant pro se.
Larkin Ingrassia LLP, Newburgh, NY (Derek S. Andrews of counsel), for respondent-respondent.
Selendy Gay Elsberg PLLC, New York, NY (Andrew R. Dunlap, Korey Boehm, and Taylor Stone of counsel), for amici curiae District of Columbia and States of Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin.
Arnold & Porter Kaye Scholer LLP, New York, NY (W. Stewart Wallace and Arthur Luk of counsel), for amici curiae Brady Center to Prevent Gun Violence and Giffords Law Center to Prevent Gun Violence.
Alvin L. Bragg, Jr., District Attorney, New York, NY (Steven C. Wu and John T. Hughes of counsel), amicus curiae pro se and for amici curiae Melinda Katz, District Attorney of Queens County, Michael E. McMahon, District Attorney of Richmond County, and Miriam E. Rocah, District Attorney of Westchester County.

BARROS, J.

OPINION & ORDER
The primary issue in this case is whether CPLR article 63-A, relating to extreme risk protection orders prohibiting a person from purchasing, possessing, or attempting to purchase or possess a firearm, rifle, or shotgun under certain circumstances, is constitutional on its face. We conclude that it is.
I. Factual Background
This proceeding was commenced by Police Officer R. M. of the City of Middletown against the respondent, C. M., on the ground that the respondent was "ACCUSED OF BRANDISHING A LOADED SHOTGUN, COCKING IT, AND POINTING IT AT HIS [*2]NEIGHBOR DURING A VERBAL DISPUTE." As a result of the incident, the respondent was charged with menacing in the third degree, a class B misdemeanor (Penal Law § 120.15). On January 20, 2023, a temporary extreme risk protection order was issued, based upon a finding of "probable cause to believe that respondent is likely to engage in conduct that would result in serious harm to self or others." A hearing on whether a final extreme risk protection order should issue was scheduled for January 25, 2023.
The respondent was granted an adjournment until March 6, 2023, because he retained counsel who needed time to prepare. On March 6, 2023, the respondent moved for a declaration that CPLR article 63-A is unconstitutional under the Due Process Clauses of the United States and New York Constitutions (see US Const 5th,14th Amends; NY Const, art 1, § 6); the Second, Fourth, Fifth, and Sixth Amendments of the United States Constitution; sections 6 and 12 of article 1 of the New York Constitution; and Civil Rights Law § 4, which provides, in nearly identical language to the Second Amendment of United States Constitution, that "[a] well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms cannot be infringed." In addition to claiming that the statute violated his Second Amendment right to keep and bear arms, the respondent claimed that CPLR article 63-A was void for vagueness and deprived him of due process of law because no physician's diagnosis was required for the issuance of an extreme risk protection order. Further, the respondent claimed that the statute violated the Fourth Amendment of the United States Constitution, and section 12 of article 1 of the New York Constitution, since once an emergency risk protection order is issued, the respondent's person, home, and property may be searched for weapons. Moreover, the statute compels a respondent to disclose the possession of weapons and turn them over, which the respondent claimed was in violation of his right against self-incrimination (see US Const 5th, 14th Amends; NY Const, art 1, § 6). The respondent also claimed that he had a right to counsel, since proceedings under CPLR article 63-A could lead to criminal charges (see US Const 6th, 14th Amends; NY Const, art 1, § 6).
Finally, the respondent claimed that the statute was unconstitutional as applied to him, because the facts did not indicate that he was likely to cause harm. This argument is not a legal challenge to the constitutionality of the statute, but rather, an argument that he should prevail on the merits at a hearing. At a hearing after the issuance of a temporary extreme risk protection order, "the petitioner shall have the burden of proving, by clear and convincing evidence, that the respondent is likely to engage in conduct that would result in serious harm to himself, herself or others, as defined in paragraph one or two of subdivision (a) of section 9.39 of the mental hygiene law" (CPLR 6343[2]), and if the petitioner is unable to meet that burden, the petition is dismissed on the merits (see Hines v Doe, 78 Misc 3d 1092 [Sup Ct, Albany County]; Mallery v DP, 78 Misc 3d 250 [Sup Ct, Schoharie County]; New York State Police Investigator Kyle W. Hutter v redacted, 2022 NY Slip Op 33882[U] [Sup Ct, Saratoga County]).
In an order and judgment dated April 4, 2023, the Supreme Court, inter alia, granted the respondent's motion and declared that the statute is unconstitutional because it deprives the respondent of his right to keep and bear arms without due process of law, and in violation of the Second Amendment, because the statute does not require the opinion of a medical expert that the respondent's mental state was such that he was "likely to engage in conduct that would result in serious harm to himself . . . or others" (R.M. v C.M., 79 Misc 3d 250, 252 [Sup Ct, Orange County] [internal quotation marks omitted]). The court also dismissed the petition. Letitia James, Attorney General of the State of New York, as intervenor, appeals.
II. The Statute in Issue
The purpose of CPLR article 63-A is "to prevent individuals from accessing firearms, rifles, and shotguns who have been deemed, through judicial process, likely to engage in conduct that would result in serious harm to themselves or others" (2019 NY Legis Ann at 20).
CPLR 6340(1) defines an extreme risk protection order as "a court-issued order of protection prohibiting a person from purchasing, possessing or attempting to purchase or possess a firearm, rifle or shotgun."
CPLR 6342(1) provides, in pertinent part, that upon an application for an extreme risk protection order:
"the court may issue a temporary extreme risk protection order, ex parte or otherwise, to prohibit the respondent from purchasing, possessing or attempting to purchase or possess a firearm, rifle or shotgun, upon a finding that there is probable cause to believe the [*3]respondent is likely to engage in conduct that would result in serious harm to himself, herself or others, as defined in paragraph one or two of subdivision (a) of section 9.39 of the mental hygiene law. Such application for a temporary order shall be determined in writing on the same day the application is filed."
In determining whether there are grounds for a temporary extreme risk protection order, the court "shall consider any relevant factors," including a nonexhaustive list of conduct by the respondent:
"(a) a threat or act of violence or use of physical force directed toward self, the petitioner, or another person;
"(b) a violation or alleged violation of an order of protection;
"(c) any pending charge or conviction for an offense involving the use of a weapon;
"(d) the reckless use, display or brandishing of a firearm, rifle or shotgun;
"(e) any history of a violation of an extreme risk protection order;
"(f) evidence of recent or ongoing abuse of controlled substances or alcohol; or
"(g) evidence of recent acquisition of a firearm, rifle, shotgun or other deadly weapon or dangerous instrument, or any ammunition therefor.
"In considering the factors under this subdivision, the court shall consider the time that has elapsed since the occurrence of such act or acts and the age of the person at the time of the occurrence of such act or acts" (id. § 6342[2]).
The subdivision further specifies that, "[f]or the purposes of this subdivision, 'recent' means within the six months prior to the date the petition was filed" (id.).
With respect to procedural safeguards, CPLR 6343(1) provides for a hearing "no sooner than three business days nor later than six business days after service of a temporary extreme risk protection order and, alternatively, no later than ten business days after service of an application under this article where no temporary extreme risk protection order has been issued." At the hearing, "the petitioner shall have the burden of proving, by clear and convincing evidence, that the respondent is likely to engage in conduct that would result in serious harm to himself, herself or others, as defined in paragraph one or two of subdivision (a) of section 9.39 of the mental hygiene law" (id. § 6343[2]).
Mental Hygiene Law § 9.39(a) permits the emergency involuntary commitment for a period of 15 days of any person alleged to have a mental illness, upon a showing that "immediate observation, care, and treatment in a hospital is appropriate and [that the mental illness] is likely to result in serious harm to himself [or herself] or others." "Likelihood to result in serious harm" is defined as:
"1. substantial risk of physical harm to himself [or herself] as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he [or she] is dangerous to himself [or herself], or
"2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm" (id.).
Admission to a mental hospital under Mental Hygiene Law § 9.39(a) shall occur "only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section." However, issuance of an extreme risk protection order under CPLR article 63-A does not require an examination by a physician or other medical provider.
After a hearing pursuant to CPLR 6343, the court may issue a final extreme risk protection order in effect for one year from the date of issuance, or if there was a temporary extreme risk protection order, one year from the date of issuance of the temporary extreme protection order (see id. § 6343[3][c]). The extreme risk protection order may be renewed, but only after another hearing under CPLR 6343 (see id. § 6345). The extreme risk protection order may also be set aside in whole or in part, upon the request of the respondent, after a prompt hearing, based upon clear and convincing evidence of "any change of circumstances that may justify a change to the order" (id. § 6343[6]).
CPLR article 63-A contains a severability clause providing that if any part or provision is declared unconstitutional or otherwise invalid, "such judgment shall not affect or impair any other part or provision of this act, but shall be confined in its operation to such part or provision" (L 2019, ch 19, § 3).
III. The Constitutionality of CPLR article 63-A
"Legislative enactments are entitled to 'a strong presumption of constitutionality'" (Dalton v Pataki, 5 NY3d 243, 255, quoting Schulz v State of New York, 84 NY2d 231, 241). "[W]hile the presumption of constitutionality is not irrefutable, as the party challenging a duly enacted statute," the respondent bore the burden of demonstrating the invalidity of CPLR article 63-A beyond a reasonable doubt (White v Cuomo, 38 NY3d 209, 216). "Generally, a party making a facial challenge to a regulation has the 'extraordinary burden . . . of proving beyond a reasonable doubt that the challenged provision suffers wholesale constitutional impairment'" (Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d 55, 61, quoting Brightonian Nursing Home v Daines, 21 NY3d 570, 577 [internal quotation marks omitted]).
"Thus, a facial challenge must fail so long as there are circumstances under which the challenged provision 'could be constitutionally applied' (Matter of Moran Towing Corp. v Urbach, 99 NY2d 443, 445). 'In other words, the challenger must establish that no set of circumstances exists under which the Act would be valid' (id. at 448)" (Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., 40 NY3d at 61 [internal quotation marks omitted]).
A. The Alleged Necessity for Proof of a Mental Impairment
The ground for holding CPLR article 63-A unconstitutional cited by the Supreme Court was that an extreme risk protection order could issue without a determination by a physician that the respondent has a condition which is "likely to result in serious harm" (Mental Hygiene Law § 9.39[a]). In so doing, the court relied on G.W. v C.N. (78 Misc 3d 289 [Sup Ct, Monroe County]). The court in that case determined that "[s]ince Mental Hygiene Law § 9.39 and CPLR article 63-A both employ the same definition for 'likelihood to result in serious harm,'" they should employ the same safeguards—i.e., the requirement of an examination by a physician (id. at 294).
However, Mental Hygiene Law § 9.39 deals with the civil confinement of mentally ill people, while CPLR article 63-A does not. The applicability of CPLR article 63-A is not confined to mentally ill people. Since a finding of a mental impairment is not required, expert medical testimony is not required (see Spickler v K.B., 81 Misc 3d 1231[A], 2024 NY Slip Op 50046[U] [Sup Ct, Albany County]; Melendez v T.M., 80 Misc 3d 1235[A], 2023 NY Slip Op 51169[U] [Sup Ct, Westchester County]; People v R.L., 80 Misc 3d 1227[A], 2023 NY Slip Op 51112[U] [Sup Ct, Suffolk County]; Haverstraw Town Police [PO Vega No. 238] v C.G., 79 Misc 3d 1005, 1015 [Sup Ct, Ulster County]; Matter of J.B. v K.S.G., 79 Misc 3d 296, 301 [Sup Ct, Cortland County]). "[W]hether a person has engaged in the type of conduct that evinces a likelihood of serious harm is a fact-based determination that may be made without the need for an expert opinion" (Matter of J.B. v K.S.G., 79 Misc 3d at 301; see Melendez v T.M., 80 Misc 3d 1235[A], 2023 NY Slip Op 51169[U]).
B. Whether the Statute Is Unconstitutionally Vague
In Matter of Anonymous v C.P. (81 Misc 3d 355, 364 [Sup Ct, Warren County]), the [*4]court noted that CPLR article 63-A "does not condition the issuance of [a temporary extreme risk protection order or a final extreme risk protection order] upon a finding that a respondent suffers from a mental illness," and it is "clear that the legislature meant to borrow only the definitions of 'likelihood to result in serious harm' into the [extreme risk protection order] statutes and not incorporate the remaining text of Mental Hygiene Law § 9.39(a) therein." The court nevertheless found the statute unconstitutional on the ground of vagueness, citing differences in the CPLR article 63-A definitions and the Mental Hygiene Law § 9.39 definition. CPLR article 63-A requires proof of the likelihood of conduct that would in fact result in serious harm to the respondent or others, while Mental Hygiene Law § 9.39 requires proof that the respondent's mental illness and conduct resulting therefrom would likely cause serious physical harm, or a reasonable fear of it. In other words, for CPLR article 63-A, likelihood describes conduct, while for Mental Hygiene Law § 9.39, likelihood describes the result of the respondent's condition and conduct—i.e., likelihood of harm resulting from the respondent's mental illness and conduct manifesting the mental illness (see Matter of Anonymous v C.P., 81 Misc 3d at 365). The court further noted that the term "serious harm" was not defined (see id. at 366).
"Due process requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms" (Foss v City of Rochester, 65 NY2d 247, 253). "A statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence with a reasonable opportunity to know what is prohibited, and it is written in a manner that permits or encourages arbitrary or discriminatory enforcement" (People v Foley, 94 NY2d 668, 681; see People v Stuart, 100 NY2d 412, 420; Matter of Gonyo v D.S., ___ Misc 3d ___, 2024 NY Slip Op 24018 [Sup Ct, Dutchess County]). "[T]he failure of a legislature to define the terms of an enactment does not itself render a law void for vagueness" (Police Benevolent Assn. of the City of New York, Inc. v City of New York, 40 NY3d 417, 427; see Davis v Gilchrist County Sheriff's Off., 280 So 3d 524, 532 [Fla Dist Ct App]).
CPLR article 63-A provides for a civil remedy (see People v A.O., ___ Misc 3d ___, ___, 2023 NY Slip Op 23356, *1 [Erie County Ct]; J.P. v W.M., 79 Misc 3d 643 [Sup Ct, Franklin County]). "[C]ivil as well as penal statutes can be tested for vagueness under the due process clause," but abstract words which convey a sufficiently accurate concept may be used in a civil statute (Montgomery v Daniels, 38 NY2d 41, 58; see Matter of Independent Ins. Agents & Brokers of N.Y., Inc. v New York State Dept. of Fin. Servs., 39 NY3d 56, 64). Mental Hygiene Law § 9.39 uses the term serious, and that statute has not been found void for vagueness, indicating that CPLR article 63-A is not void for vagueness (see Haverstraw Town Police [PO Vega No. 238] v C.G., 79 Misc 3d at 1013). Further, the enumeration of factors in CPLR 6342(2) to be considered in whether to issue a temporary extreme risk protection order indicates that the statute is not vague (see Anonymous Detective at Westchester County Police v A.A., 71 Misc 3d 810, 816 [Sup Ct, Westchester County]). Moreover, the statute sets forth a standard for commencement of a proceeding, thus "avoiding any arbitrary and discriminatory enforcement" (id. at 817).
C. Due Process and the Second Amendment
"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" (Mathews v Eldridge, 424 US 319, 335; see Matter of State of New York v Floyd Y., 22 NY3d 95, 104).
Here, the private interest is the constitutional right to keep and bear arms.
The Second Amendment of the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In New York, Civil Rights Law § 4 adopted that same language as part of New York law in 1909 (see L 1909, ch 14)—but there is no separate state constitutional right to keep and bear arms.
In District of Columbia v Heller (554 US 570, 592), the Supreme Court of the United [*5]States ruled that the Second Amendment codifies a preexisting individual right to keep and bear arms, but that right is not unlimited (see id. at 595, 626). Longstanding prohibitions on the possession of firearms by felons and the mentally ill were described as presumptively lawful (see id. at 626-627).
In New York State Rifle & Pistol Assn., Inc. v Bruen (597 US 1, 19), the Supreme Court of the United States ruled that the "government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." The Court further noted that in the wake of the Heller decision and the later decision in McDonald v Chicago (561 US 742), the Circuit Courts of Appeals had developed a two-step test to rule on alleged infringement of Second Amendment rights (see United States v Jimenez, 895 F3d 228, 234 [2d Cir]). The first step required a determination of whether the challenged law regulated activity falling outside the scope of the Second Amendment right as originally understood. If the first step resulted in a determination that the regulated activity was protected by the Second Amendment, the second step required a balancing of whether the regulation was justified under either strict or intermediate scrutiny (see New York State Rifle & Pistol Assn., Inc. v Bruen, 597 US at 18-19). In Bruen, that second step was rejected, on the ground that "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees'" (id. at 70, quoting McDonald v Chicago, 561 US at 780). In its place, the Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the challenged regulation is unconstitutional unless it can be shown that "the regulation is consistent with this Nation's historical tradition of firearm regulation" and therefore outside of the Second Amendment's unqualified protections (New York State Rifle & Pistol Assn., Inc. v Bruen, 597 US at 17; see Taveras v New York City, 2022 WL 2678719, 2022 US App LEXIS 19093 [2d Cir, No. 21-398]).
The United States Court of Appeals for the Second Circuit recently ruled that "[a] reasoned denial of a carry license to a person who, if armed, would pose a danger to themselves, others, or to the public is consistent with the well-recognized historical tradition of preventing dangerous individuals from possessing weapons" (Antonyuk v Chiumento, 89 F4th 271, 307 [2d Cir]), since "[t]here is widespread agreement among both courts of appeals and scholars that restrictions forbidding dangerous individuals from carrying guns comport with 'this Nation's historical tradition of firearm regulation" (id. at 314, quoting New York State Rifle & Pistol Assn., Inc. v Bruen, 597 US at 17; see Matter of Gonyo v D.S., ___ Misc 3d ___, 2024 NY Slip Op 24018). CPLR article 63-A imposes a restriction of an individual's right to own or possess a firearm when there is probable cause to believe that he or she is likely to engage in conduct that would result in serious harm to himself, herself, or others, which is thereafter supported by clear and convincing evidence at a hearing. This regulation is consistent with the Nation's historical tradition of firearm regulation in keeping dangerous individuals from carrying guns (see Kohler v S.L., 81 Misc 3d 1220[A], 2023 NY Slip Op 51415[U] [Sup Ct, Albany County]; Antonyuk v Chiumento, 89 F4th 271) and, therefore, is presumptively lawful (see Hope v State, 163 Conn App 36, 43, 133 A3d 519, 524-525).
Further, CPLR article 63-A contains ample procedural safeguards and bears a substantial relationship to the government's interest in protecting the public at large and preventing crime and serious injury (see Melendez v T.M., 80 Misc 3d 1235[A], 2023 NY Slip Op 51169[U]; People v R.L., 80 Misc 3d 1227[A], 2023 NY Slip Op 51112[U]; Matter of J.B. v K.S.G., 79 Misc 3d at 302).
Moreover, other New York statutes contain similar provisions, i.e., a court may impose as a non-monetary condition of release that the defendant "refrain from possessing a firearm" (CPL 500.10[3-a][c]) or order suspension of gun licenses or surrender of weapons "where the court finds a substantial risk that the respondent may use or threaten to use a firearm, rifle or shotgun unlawfully against the person or persons for whose protection [a] temporary order of protection is issued" (Family Ct Act § 842-a[1][b]). These provisions apparently have not raised Second Amendment concerns (see People v R.L., 80 Misc 3d 1227[A], 2023 NY Slip Op 51112[U], *3 n 2; Haverstraw Town Police [PO Vega No. 238] v C.G., 79 Misc 3d at 1011).
D. Other Potential Constitutional Impediments
With respect to searches and seizures, CPLR 6342(8) provides:
"A law enforcement officer serving a temporary extreme risk protection order shall request that the respondent immediately [*6]surrender to the officer all firearms, rifles and shotguns in the respondent's possession and the officer shall conduct any search permitted by law for such firearms. The law enforcement officer shall take possession of all firearms, rifles and shotguns that are surrendered, that are in plain sight, or that are discovered pursuant to a lawful search. As part of the order, the court may also direct a police officer to search for firearms, rifles and shotguns in the respondent's possession in a manner consistent with the procedures of article six hundred ninety of the criminal procedure law."
CPL article 690 deals with search warrants and how to obtain them.
CPLR 6342(8) contemplates a search—apparently pursuant to a search warrant— where the court finds that the respondent has not surrendered all of his or her firearms, rifles, and shotguns as required. If the respondent continues to possess firearms, rifles, and shotguns in violation of an extreme risk protection order, those guns are illegal weapons justifying a legal search based upon probable cause to believe the respondent is in possession of illegal weapons (see Haverstraw Town Police [PO Vega No. 238] v C.G., 79 Misc 3d at 1019). A search could also be justified under the special needs exception to the warrant requirement, such as where the respondent threatened suicide (see Anonymous Detective at Westchester County Police v A.A., 71 Misc 3d at 817). If weapons are seized, the respondent could move to suppress evidence of the weapons seized and preclude such evidence from being used against the respondent in a criminal proceeding (see People v R.L., 80 Misc 3d 1227[A], 2023 NY Slip Op 51112[U]; People v A.O., ___ Misc 3d ___, 2023 NY Slip Op 23356). Thus, the respondent's rights under the Fourth Amendment of the United States Constitution, and section 12 of article 1 of the New York Constitution, are protected.
Upon the service of a temporary or final extreme risk protection order upon the respondent, the "law enforcement officer serving [the] order shall request that the respondent immediately surrender to the officer all firearms, rifles and shotguns in the respondent's possession" (CPLR 6342[8]; 6343[3][d]). The surrender of such weapons could be considered a violation of one's right against self-incrimination if the surrender could lead to criminal prosecution. The right against self-incrimination does not apply in a civil proceeding, and as previously noted, proceedings pursuant to CPLR article 63-A are civil in nature. However, "the Fifth Amendment accords an individual the privilege not to answer questions in a civil proceeding if the answers might incriminate the person in future criminal proceedings" (Andrew Carothers, M.D., P.C. v Progressive Ins. Co., 33 NY3d 389, 407). A self-incrimination dilemma may be resolved simply by ruling that admissions made pursuant to CPLR article 63-A are not admissible in criminal proceedings—if and when criminal proceedings arise (see Melendez v T.M., 80 Misc 3d 1235[A], 2023 NY Slip Op 51169[U]; Haverstraw Town Police [PO Vega No. 238] v C.G., 79 Misc 3d 1005; Anonymous Detective at Westchester County Police v A.A., 71 Misc 3d at 816).
A surrender of an illegal gun is incriminating. Therefore, the fact that a defendant surrendered an illegal gun is privileged under the Fifth Amendment, and suppression of the gun may be warranted in a prosecution for weapons possession (see People v Havrish, 8 NY3d 389, 397). However, that does not mean that a court cannot order the surrender of the weapon (see Haverstraw Town Police [PO Vega No. 238] v C.G., 79 Misc 3d at 1018), especially since rights against self-incrimination may be protected in any criminal proceedings which arise.
With respect to the right to counsel, CPLR 6342(4)(d)(iii) provides that the respondent shall be informed that he or she may seek the advice of an attorney and an attorney should be consulted promptly (see Matter of J.B. v K.S.G., 79 Misc 3d at 303). However, there is no provision requiring the court to assign counsel to an indigent respondent because there is no constitutional right to counsel in civil proceedings—although the Legislature may grant a statutory right to counsel (see Family Court Act § 262; Matter of State of New York v Raul L., 120 AD3d 52, 62; Haverstraw Town Police [PO Vega No. 238] v C.G., 79 Misc 3d at 1020).
Since CPLR article 63-A contains a severability clause, the potential deprivation of an indigent respondent's right to counsel—if in fact there were such a right (see J.P. v W M., 79 Misc 3d 643 [right to counsel based upon the possibility of criminal prosecution])—would not be sufficient to conclude that CPLR article 63-A is unconstitutional on its face. Further, in the instant case, the respondent had retained counsel. Therefore, the question of whether an indigent respondent has a constitutional right to assigned counsel is not in issue in this case (see Matter of Gonyo v D.S., [*7]___ Misc 3d at ___ n 13, 2024 NY Slip Op 24018, *23 n 13).
IV. Conclusion
Accordingly, the order and judgment is reversed, on the law, the respondent's motion for a declaration that CPLR article 63-A is unconstitutional is denied, the petition is reinstated, and the matter is remitted to the Supreme Court, Orange County, for further proceedings on the petition and, thereafter, the entry of a judgment, inter alia, declaring that CPLR article 63-A is constitutional.
DILLON, J.P., DOWLING and WAN, JJ., concur.
ORDERED that the order and judgment is reversed, on the law, with costs, the respondent's motion for a declaration that CPLR article 63-A is unconstitutional is denied, the petition is reinstated, and the matter is remitted to the Supreme Court, Orange County, for further proceedings on the petition and, thereafter, the entry of a judgment, inter alia, declaring that CPLR article 63-A is constitutional.
ENTER:
Darrell M. Joseph
Clerk of the Court