McMorris v Michael W. (2024 NY Slip Op 24093)

[*1]

McMorris v Michael W.

2024 NY Slip Op 24093

Decided on March 26, 2024

Supreme Court, Dutchess County

Hayes, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 26, 2024
Supreme Court, Dutchess County

Investigator Melissa McMorris, a Member of the New York State Police, Petitioner,

against
Michael W., Respondent.

Index No. 2023-54516

Petitioner is represented by
NYS Attorney General's Office
By: Meg Bailey, Assistant Attorney General
One Civic Center Plaza, Suite 401
Poughkeepsie, NY 12601
(845) 867-4229
Respondent was pro se.

Michael G. Hayes, J.

Petitioner seeks an Extreme Risk Protection Order (ERPO) against Respondent Michael W. under Article 63-A of the CPLR.
Respondent is the subject of related unindicted felony charges pending in the Town of Union Vale Justice Court arising out of the same facts and circumstances that serve as the basis of the ERPO filing. The pending criminal charges include Criminal Possession of a Weapon in the Third Degree (a Class D Felony), Reckless Endangerment in the First Degree (a Class D Felony), and Criminal Contempt in the First Degree (a Class E Felony). Respondent is represented in those proceedings by the Dutchess County Public Defender's Office based upon a finding that he is indigent and cannot afford to retain counsel.
When Respondent appeared before this Court for the scheduled ERPO hearing, he asked the Court to appoint the Public Defender's Office to represent him in the ERPO proceeding. It was also disclosed that Respondent was the subject of an Order for Psychiatric Examination pursuant to CPL Article 730. The Court advised Respondent that his request for the appointment of counsel in the ERPO proceeding would be held in abeyance pending the CPL 730 examination. The Court also deferred consideration of whether a Guardian ad Litem should be appointed on Respondent's behalf in this ERPO proceeding pending the CPL 730 examination.
Respondent was subsequently found fit for trial in those related criminal proceedings. At [*2]this point, based upon my independent observations and interactions with Respondent in the courtroom, there appears to be no basis to appoint a Guardian ad Litem on his behalf in this ERPO proceeding.
In the past, I have informally asked the Public Defender's Office to voluntarily appear in ERPO cases when it was already representing an indigent person in related criminal proceedings. However, the Public Defender notified me last year that the County Attorney has concerns about that informal arrangement. Upon receiving this information, I offered to provide the County Attorney with an opportunity to be heard the next time that I was presented with this situation.
The County Attorney has submitted a written brief that takes a careful and thoughtful look at the issue. This brief recognizes that there are conflicting trial court decisions that have reached different conclusions on various right to counsel issues under the existing statutory scheme. The brief also accurately observes that the Sixth Amendment right to counsel does not apply to civil proceedings, and that neither CPLR Article 63-A nor Article 18-b of the County Law provide any express statutory right to counsel in an ERPO proceeding. The County Attorney concludes its brief by taking a neutral position as to whether the Legislature's "failure to do so violates the constitutional or due process rights" of indigent ERPO respondents, and instead defers that question to the courts.
The County Attorney has also shared correspondence that the New York State Office of Indigent Legal Services (ILS) previously sent to the Dutchess County Public Defender's Office addressing this issue. In that letter, ILS took the position that "because of the unique nature of ERPO proceedings. . . in instances where a current client is facing related ERPO proceedings, public defense providers should represent the client at the ERPO proceeding whenever possible to fully protect the client's rights on the related pending criminal and Family Court matter." That letter goes on to explain that:
ILS has steadfastly maintained that while respondents in ERPO proceedings are not entitled to assigned counsel under County Law Article 18-B, representing clients in ERPO proceedings in those narrow circumstances in which a public defense provider is currently representing a client on a related criminal or Family Court matter is consistent with public defense providers' professional responsibility to protect the rights of their clients and to provide quality representation.
This is because ERPO proceedings, unlike other civil matters, involve unique circumstances in which the proceeding can have significant and meaningful consequences for a pending criminal or Family Court matter. As discussed in a Report of the New York State Bar Association Task Force on Mass Shootings and Assault Weapons ("NYSBA Report"), adopted by the NYSBA House of Delegates in November 2020, "because the application for an ERPO is a civil proceeding, it lacks certain protections that that attach to a criminal action and could potentially result in criminal jeopardy for a respondent."
***
More specifically, ERPO proceedings necessarily involve law enforcement, either as a petitioning agency, as the agency responsible for enforcing an ERPO order, or both. Moreover, in most circumstances, an ERPO petitioner is represented by the Attorney General's Office, while the low-income ERPO respondent is unrepresented. Finally, [*3]ERPO proceedings involve clients who are alleged to have mental illness. These circumstances — the involvement of law enforcement, a petitioner who is represented by an attorney against a mentally ill unrepresented respondent — produce an unlevel playing field that, as the NYSBA Report noted, jeopardizes the client's rights on the related criminal or Family Court matter. Providing representation on the ERPO proceeding is the best means of protecting the client's rights (internal citations omitted).
The Court's independent research confirms that no court with binding authority has rendered a decision on the precise issue presented here: whether the assignment of counsel for an indigent person is constitutionally mandated in an ERPO proceeding where there is a pending related criminal proceeding. For the reasons stated herein, I conclude that there is a federal and state constitutional right to counsel at an ERPO hearing when there are pending related criminal proceedings, and that an indigent person is entitled to the appointment of assigned counsel under those circumstances as a matter of due process and fundamental fairness.
While there is no question that the Sixth Amendment right to counsel is limited to criminal proceedings, there is also no question that New York courts have recognized a constitutional right to the appointment of counsel in a variety of civil proceedings as a matter of due process and fundamental fairness [See e.g., Matter of Floyd Y., 22 NY3d 95, 105 (2013) (MHL Article 10 sex offender civil commitment proceedings); Matter of Jung (State Comm. on Jud. Conduct), 11 NY3d 365, 373 (2008) (FCA Article 8 family offense proceedings) ("Integral to this fundamental interest in the liberty, care and control of their children, and coextensive with the right to be heard in a meaningful manner, is a parent's right to representation"); Matter of Rappaport v. G.M., 239 AD2d 422 (2d Dept. 1997) (involuntary hospitalization due to a communicable disease); Matter of St. Luke's-Roosevelt Hospital Center, 159 Misc 2d 932 (Sup Ct. NY County 1993) (Glen, J), aff'd 215 AD2d 337 (1st Dept. 1995), aff'd 89 NY2d 889 (1996) (MHL Article 81 guardianship proceedings); Rivers v. Katz, 67 NY2d 485 (1986) (administration of psychotropic medication over objection); Matter of Jennings v Jennings, 42 AD2d 568 (2d Dept 1972) (FCA Article 4 enforcement proceedings); Matter of Ella B, 30 NY2d 352 (1972) (FCA Article 10 child neglect proceedings) ("A parent's concern for the liberty of the child, as well as for his care and control, involves too fundamental an interest and right to be relinquished to the State without the opportunity for a hearing, with assigned counsel if the parent lacks the means to retain a lawyer"); Matter of Buttonow, 23 NY2d 385 (1968) (proceeding to review change of patient's status from involuntary to voluntary civil commitment in a psychiatric facility); People ex rel Rogers v. Stanley, 17 NY2d 256 (1966) (involuntary civil commitment in a psychiatric facility)].
Where a due process right to counsel exists, the Legislature has often taken the extra step of codifying that constitutional right and incorporating it within the statutory scheme. Some statutes implement this right to counsel without direct reference to its constitutional underpinnings. [See e.g., MHL §9.60 (assisted outpatient treatment); MHL §10.08 (sex offender civil commitment); MHL §81.10 (guardianship)]. Article 2, Part 6 of the Family Court Act (Counsel for Indigent Adults in Family Court Proceedings) does so expressly, stating "Persons involved in certain family court proceedings may face the infringements of fundamental interests and rights. . . and therefore have a constitutional right to counsel in such proceedings. Counsel is often indispensable to a practical realization of due process of the law. . ." [FCA §261 (Legislative findings and purpose)].
The Family Court Act and the Surrogate's Court Procedure Act provide an itemized list of the proceedings that automatically qualify for the assignment of counsel [FCA §262(a); SCPA §407(1)(a)]. In addition to those designated proceedings, those statutes also provide the court with the authority to assign counsel to any adult in any other Family Court or Surrogate's Court proceeding upon a judicial determination that such assignment is mandated by the constitution of New York or of the United States [FCA §262(a); SCPA §407(1)(a)]. 
While those statutes remove any doubt as to a court's authority to appoint counsel in certain circumstances, the failure of a statutory scheme to codify a constitutional protection does not extinguish it, nor can that failure serve as a basis to deprive an indigent person of the right to due process. [Matter of Buttonow, supra, 23 NY2d at 393]. Rather, in the absence of express statutory authority for the assignment of counsel, the courts will read that requirement into the statute when a contrary interpretation would result in the denial of a fundamental constitutional right [id. at 393; See also Matter of Mark C.H., 28 Misc 3d 765, 786-87 (Sur. Ct. NY County 2010) (Glen, S) ("Where, as here a statute would be unconstitutional [as a matter of fundamental due process] in the absence of a particular required procedure, the courts of our state have not hesitated to 'read in' those procedures")].
When assessing whether a constitutional right to counsel should be read into a statute as a matter of due process and fundamental fairness, it is well-settled that "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." [Lassiter v. Department of Social Servs, 452 US 18, 26 (1981)]. As such, there is a rebuttable presumption that an indigent party only has a constitutional due process right to appointed counsel where losing that proceeding may cause that party to be deprived of physical liberty [id. at 27,31; See also Matter of Commissioner of Social Servs. Of City of NY v. Remy K.Y., 298 AD2d 261,262 (1st Dept. 2002)]. "It is against this presumption that all the other elements in the due process decision must be considered" [Id. at 27].
Three factors have been identified as the appropriate focus of this evaluation: the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions [id. at 27, citing Mathews v. Eldridge, 424 US 319,335 (1976)].
Every ERPO proceeding implicates a significant private interest — the constitutional right to keep and bear arms for self-defense that is protected by the Second and Fourteenth Amendments [McDonald v City of Chicago, 561 US 742 (2010); District of Columbia v. Heller, 554 US 570 (2008)]. And as the Supreme Court has observed on at least two occasions, the rights conferred on private citizens by the Second and Fourteenth Amendments are not to be treated as a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees" [New York State Rifle and Pistol Assn., Inc., v. Bruen, 597 US 1,70 (2023); McDonald at 780].
The State also possesses a significant interest in ERPO proceedings — the promotion of public safety and the prevention of tragedies involving firearms, including interpersonal gun violence and suicide involving a gun [Sen. Introducer's Memo in Support, Bill Jacket, L 2019, ch 19, §1]. The State has adopted Article 63-A of the CPLR (Extreme Risk Protection Orders) in an effort to provide concerned family members, law enforcement authorities, and certain other specified stakeholders with an efficient mechanism to obtain a court order prohibiting a person from purchasing, possessing or attempting to purchase or possess a firearm, rifle or shotgun, upon a showing that the person is likely to engage in conduct that would result in serious harm to self or others.
Turning to the risk that the statutory procedures will lead to an erroneous decision, there are several procedural safeguards that are designed to reduce that risk. Most notably, an ERPO can only be issued after a hearing on notice to the respondent, the respondent has the right to participate in the ERPO hearing and to present evidence, and the petitioner has the burden of proving that the statutory criteria have been met by clear and convincing evidence [CPLR §6343(1,2)].
However, the statute does open the door to some level of risk. It expressly permits a trial court to consider two types of hearsay evidence: the petition itself, and the results of the background investigation that the relevant law enforcement agency is required to conduct in advance of the ERPO hearing [CPLR §§6342(9), 6343(2)]. The statute is silent as to the extent to which a petitioner can rely upon hearsay evidence to carry its burden. And as at least one trial court has noted, there is also considerable debate about whether the ERPO statute implicitly permits a trial court to consider other types of hearsay evidence [Haverstraw Town Police v. C.G., 79 Misc 3d 1005, 1014 (Sup. Ct. Ulster County 2023)]. These ambiguities can lead to inconsistent results arising from the uneven application of the law, which in turn increases the risk of erroneous decisions.
Balancing these elements against each other and setting their net weight in the scales against the presumption that there is a right to counsel only when incarceration is a potential outcome of the proceeding [Lassiter at 27], I find that in the ordinary ERPO proceeding the scales tip in favor of the presumption that no right to assigned counsel exists. There is no question that the Second Amendment rights of private citizens are an important interest and are entitled to substantial protection. There is also no question that the State has an urgent interest in promoting and preserving public safety by adopting procedures that are designed to avoid tragedies involving gun violence. And the procedural requirements of the statute — the right to a hearing on notice, the right to present evidence at that hearing, and the imposition of a heightened burden of proof — provide adequate albeit imperfect procedural safeguards in the ordinary ERPO proceeding. When considered as a whole, these three elements do not have sufficient net weight to overcome the presumption against a right to appointed counsel.
That finding is limited to the ordinary ERPO hearing. By "ordinary" I mean an ERPO proceeding where there are no related criminal charges pending at the same time. In that setting, the private interests at stake are limited to the Second Amendment right to keep and bear arms. Granted, those constitutional rights cannot be relegated to second-class status [Bruen at 70]. But the Second Amendment has never been interpreted as providing a right to assigned counsel in civil cases akin to the Sixth Amendment right in criminal cases. And the potential consequences of a civil ERPO proceeding are limited to the interruption of the right to purchase, possess, or attempt to purchase or possess a firearm, rifle, or shotgun for a period of up to one year, subject to a request for renewal [CPLR §§6343(3)(c), 6345]. While by no means inconsequential, the private interests at stake in the ordinary ERPO proceeding do not rebut the presumption against a right to assigned counsel in light of the countervailing State interests and statutory procedural safeguards.
But the weight of the private interests implicated by an ERPO hearing increase exponentially when related criminal charges are also pending. In that setting, fundamental constitutional rights and protections are implicated in two related proceedings arising from the same facts and circumstances. If an ERPO hearing was merely a collateral proceeding that carried with it the threat of loss of a license or privilege, those potential consequences would not [*4]constitute a sufficient private interest to rebut the presumption against a right to assigned counsel [see Matter of Smith v Passidomo, 120 AD2d 599 (2d Dept. 1986) (DMV revocation hearing)]. And as explained, the private interests implicated by an ERPO hearing absent a related pending criminal proceeding also fail to carry sufficient weight to rebut the presumption. 
But ERPO proceedings and criminal cases each carry consequences of constitutional dimension. When they arise from the same facts and circumstances, the confluence of these two inextricably intertwined proceedings shifts the paradigm. In this setting, an ERPO respondent must decide whether to defend or sacrifice a fundamental constitutional right in a civil proceeding, while balancing that decision against the risk that any effort to preserve this Second Amendment right will have devastating, unintended consequences in the related criminal case.
The perils associated with making this kind of decision without the assistance of counsel are self-evident. In every ERPO hearing that I have conducted where the respondent has a privately retained attorney in a related pending criminal case, the privately retained attorney has also appeared in the ERPO proceeding.
This is undoubtedly because, as ILS has previously instructed, representing a client in a related ERPO proceeding is consistent with a criminal defense attorney's professional responsibility to protect the rights of the client and provide quality representation. Thus, even though there is no Sixth Amendment or express statutory right to counsel in an ERPO hearing, ILS has advised public defense providers that they should represent their clients at ERPO hearings when there are pending related criminal charges because: (1) ERPO proceedings are unlike other civil matters and involve unique circumstances which can have significant and meaningful consequences for a pending criminal case, and (2) the peculiar mechanics of an ERPO hearing produce an unlevel playing field that jeopardize a client's rights in the related criminal case.
The guidance letter asserts that the additional funding that ILS has made available to counties to improve the quality of public defense should bolster the capacity of public defense providers to provide this representation when necessary to fully protect the rights of their clients. But in that same guidance letter, ILS continues to "steadfastly maintain" that ERPO respondents are not entitled to assigned counsel under Article 18-B of the County Law.
As such, the ILS guidance can only be read as applying solely to institutional providers, who have used these additional funds to increase staffing and are therefore equipped to assign salaried staff attorneys to provide this additional representation. The additional funding that institutional providers have received has no bearing on the assigned counsel panel (ACP), who are paid a fairly nominal hourly rate from the 18-B fund that ILS steadfastly maintains remains unavailable for purposes of an ERPO proceeding, even when a related criminal case is pending. Thus, ERPO's unlevel playing field (as ILS described it) would be further skewed if, as a practical matter, an indigent person's access to counsel is dependent on whether assigned counsel is an institutional provider or an attorney on the 18-B panel.
Returning to the three elements of the Mathews balancing test, I find that the private interests at stake carry much greater weight in those limited situations when a related criminal case is pending at the time of the ERPO hearing. I also find that the government's interest in an ERPO proceeding remains unchanged when there is a pending related criminal proceeding. Finally, because the stakes are much higher when there is a pending related criminal case, I also find that the risk of an erroneous decision is magnified by the statute's failure to provide clear direction as to the weight and treatment of hearsay evidence at an ERPO hearing.
Weighing these elements against the presumption that the right to counsel only exists when incarceration is a direct potential outcome, I find that the scales tip in favor of a right to assigned counsel at an ERPO hearing when there are pending related criminal charges. A contrary interpretation would compel an indigent person to navigate this constitutional minefield without the benefit of the assistance of counsel - a notion that is entirely inconsistent with fundamental fairness and a result that would violate an indigent person's fundamental constitutional right to due process.
Turning to the trial court decisions that the County Attorney cited, my decision most closely aligns with J.P v W.M., 79 Misc 3d 643 (Sup Ct Franklin County 2023). There, the court was critical of ERPO's failure to make any provision for a statutory right to counsel, stating that it "simply fails to take into consideration the possibility of criminal charges and the need for additional due process protection in some cases." [id. at 645]. Finding that "our state and federal constitutions demand more protection than is set forth in the ERPO statute," the court held that the assignment of counsel is constitutionally mandated for an indigent respondent "where it is apparent on the face of the ERPO application that the allegation involves a criminal investigation, potential criminal liability, and a possible loss of liberty." [id. at 647].
While I agree that there is a due process right to counsel in an ERPO hearing when there are pending related criminal charges, I do not agree that this right to counsel extends to situations when there is only a pending criminal investigation or the potential for criminal liability. The Sixth Amendment right does not extend that far in criminal proceedings, and the mere threat of possible future criminal liability does not provide a sufficient basis to recognize a right to counsel in a civil ERPO proceeding as a matter of due process or fundamental fairness. Therefore, I find that the right is limited to an ERPO hearing where an accusatory instrument or arrest warrant has been filed in a related criminal proceeding.
Turning to the other four trial court decisions cited by the County Attorney, they all involved facial constitutional challenges by respondents who, significantly, were represented by counsel [Melendez v. T.M., 80 Misc 3d 1235(A) (Sup Ct Westchester County 2023); Haverstraw Town Police v. C.G., 79 Misc 3d 1005 (Sup Ct. Ulster County 2023); J.B. v. K.S.G., 79 Misc 3d 296 (Sup Ct Cortland County 2023); Anonymous Detective at Westchester County Police v. A.A., 71 Misc 3d 810 (Sup Ct Westchester County 2021)]. In fact, two of those decisions specifically pointed to the fact that the respondent was represented by counsel as a basis to deny their right to counsel challenges [Anonymous Det at 818; Melendez at 6. See also Gonyo v. D.S., 2024 NY Slip No 24018, fn. 13 (Sup Ct Dutchess County 2024) (Davis, J.) (rejecting several facial constitutional challenges to the ERPO statute, but expressly declining to reach the right to assigned counsel issue because respondent had retained counsel)]. And in Anonymous Det, that representation was actually provided by an institutional public defense provider — the Legal Aid Society.
Two of those decisions appear to be limited to an analysis of the Sixth Amendment right to assigned counsel. In Anonymous Det, the court held "Respondent was afforded the protections of the Sixth Amendment in the criminal proceeding, but this civil statute does not extend that right to representation in this special proceeding." And in Haverstraw Town Police, while the court described the right to counsel challenge as the respondent's "most legally firm attack on the ERPO statute," the court ultimately denied that challenge because "A ruling that counsel are constitutionally required for ERPO respondents would be a significant expansion of Sixth Amendment law. Such an expansion is better left for higher courts or, if it deems [*5]appropriate as a matter of public policy, for the Legislature."
In Melendez, the court concluded that due process was satisfied in that particular case because the respondent would be represented by counsel at the ERPO hearing and, as previously noted, declined to reach the broader right to assigned counsel issue because the respondent lacked standing to raise it. And while the J.B. v. K.S.G. court found that the lack of statutory authority to appoint counsel in an ERPO hearing did not violate due process, that finding relied on the cursory observation that "there is no constitutional right to counsel in civil proceedings." There is no indication that the respondent raised the question, or the court considered, whether a different rule would apply when related criminal proceedings are pending at the time of the ERPO hearing.
To the extent that all four decisions rely on a Sixth Amendment analysis, I concur in those findings. There is no Sixth Amendment right to assigned counsel in an ERPO proceeding. And while J.B. v. K.S.G accurately states that there is no constitutional right to counsel in civil proceedings as a general rule, as discussed herein that general rule has given way to exceptions where a contrary result would violate the fundamental constitutional right to due process.
The J.B. v. K.S.G court cited two MHL Article 10 sex offender civil confinement cases in support of its denial of the right to counsel challenge to the ERPO statute [Matter of Floyd Y., 22 NY3d 955 (2013) and Matter of Raul L., 120 AD3d 52 (2d Dept 2014)]. But a careful reading of those cases confirms that, while there is no Sixth Amendment right to counsel in a civil proceeding, there is still a constitutional right to counsel in select civil matters as a matter of due process and fundamental fairness. 
In Floyd Y., the Court of Appeals applied the Mathews balancing test to assess whether the admission of certain hearsay evidence at an Article 10 civil proceeding violated the constitutional right to procedural due process under the Fifth and Fourteenth Amendments. When assessing the procedural safeguards designed to minimize the risk of an erroneous decision as part of that Mathews test, the Court identified the right to counsel as one of those protections. However, it did not rely on MHL §10.08(g) as the exclusive source of that right to counsel. It also cited Rivers v. Katz, 67 NY2d 485 (1986) and People ex rel Rogers v. Stanley, 17 NY2d 256 (1966), two of the cases cited herein as examples of civil proceedings that implicate a constitutional right to the appointment of counsel as a matter of due process and fundamental fairness, even in the absence of an express statutory grant of authority.
In Raul L, the Second Department was asked to consider whether a waiver of the right to counsel in a MHL Article 10 proceeding must satisfy a constitutional standard similar to a criminal proceeding (i.e., unequivocal, voluntary, and intelligent), or whether it was subject to a lesser standard because it was a statutory rather than constitutional right. The Second Department started its analysis by acknowledging the "due process considerations" which underpin that Article 10 right. The Second Department also looked to its waiver of counsel jurisprudence in those Family Court matters that, although civil in nature, trigger the right to counsel because they "implicate constitutional due process considerations (that) frequently involve issues of fundamental import." Finding that the interests at stake in an MHL Article 10 proceeding are no less significant than the interests involved in those Family Court cases, the Second Department concluded that a waiver of the Article 10 statutory right to counsel must meet the same constitutional standard as a waiver of the right to counsel in a criminal case. Citing Floyd Y and Mathews, the Second Department also held that even though a failure to conduct the necessary inquiry did not constitute a Sixth Amendment violation, the trial court's [*6]failure to satisfy the constitutional standard rendered the waiver ineffective in light of the due process considerations underpinning that statutory right [id. at 64 ("at the heart of the due process guarantees in the federal and state constitutions is the principle that when the State seeks to take life, liberty, or property from an individual, the State must provide effective procedures that guard against an erroneous deprivation")].
In any event, while the decisions of a court of coordinate jurisdiction are entitled to respectful consideration, they are not binding. [East River Realty Co., LLC v. New York State Department of Environmental Conservation, 22 Misc 3d 404, 413 (Sup. Ct. 2008), aff'd 68 AD3d 564 (1st Dept. 2009); Matter of DaimlerChrysler Corp. v. Spitzer, 6 Misc 3d 228, 236 (Sup. Ct. 2004), aff'd 26 AD3d 88 (3d Dept. 2005), aff'd 7 NY3d 653 (2006)]. Accordingly, to the extent that the constitutional analysis articulated in this decision cannot be reconciled with the decisions of my distinguished trial court colleagues, I respectfully adhere to my determination.
Finally, on March 20, 2024, the Second Department announced its decision in Matter of R.M. v. C.M., 2024 NY Slip Op. 01545, reversing a trial court decision that declared the ERPO statute unconstitutional on its face. That trial court decision found that the ERPO statute "as currently written, lacks sufficient statutory guardrails to protect a citizen's Second Amendment constitutional right to bear arms" because it fails to require an evaluation or opinion from a medical or mental health expert that the respondent presents a condition that renders him "likely to engage in conduct that would result in harm to himself" [R.M. v. C.M., 79 Misc 3d 250, 251-52 (Sup Ct Orange County 2023)].
In reaching this conclusion, the trial court focused its analysis on MHL §9.39, which identifies the procedures that must be followed before anyone can be involuntarily hospitalized in a psychiatric facility, including the requirement that the hospitalization be supported by the opinion of qualified medical or mental health experts. Pointing out that MHL §9.39 and the ERPO statute employ the same "likelihood to result in serious harm" definition, the trial court criticized the ERPO statute for failing to provide the same level of procedural protection, stating "Without the requirement of any input from a medical or mental health expert, the Court is required to make a determination of whether the respondent 'is likely to engage in conduct that would result in serious harm to himself, herself or others, as defined in section 9.39 of the mental hygiene law.'" The trial court held that this failure to statutorily mandate a supporting expert opinion would deprive an ERPO respondent of a fundamental constitutional right without due process of law. In a footnote, the trial court also observed that "the law is replete with issues" regarding the representation of infants, patients in mental health facilities, and people "who might otherwise qualify for indigent legal services."
The Second Department drew a sharp distinction between MHL §9.39 and the ERPO statute, stating, "Mental Hygiene Law §9.39 deals with the civil confinement of mentally ill people, while CPLR article 63-A does not." The Second Department explained that involuntary hospitalization in a psychiatric facility pursuant to MHL §9.39 requires a showing that a respondent suffers from a "mental illness for which immediate observation, care and treatment in a hospital is appropriate" and a showing that the respondent is "likely to result in harm to himself or others" as a result of that mental illness if he is not hospitalized.
By comparison, no finding of mental illness is required to secure an Extreme Risk Protection Order under Article 63-A of the CPLR. Therefore, the Second Department found that since proof of mental impairment is not required by the statute, no expert medical testimony is required at an ERPO hearing. Rather, citing J.B. and Melendez, supra, the Second Department [*7]held that "whether a person has engaged in the type of conduct that evinces a likelihood of serious harm is a fact-based determination that may be made without the need for expert opinion."
The Second Department also rejected the facial constitutional challenges to the ERPO statute on the grounds of vagueness and due process. As to vagueness, citing Westchester Det., supra, the Second Department held that the Legislature did not incorporate the remaining text of MHL §9.39 into the ERPO statute when it borrowed its "likelihood to result in serious harm" definition. The Second Department also held that in the ERPO statute "likelihood describes conduct," while under MHL §9.39 "likelihood describes the result of the respondent's condition and conduct — i.e., likelihood of harm resulting from the respondent's mental illness and conduct manifesting the mental illness." Finally, the Second Department held that the ERPO statute "bears a substantial relationship to the government's interest in protecting the public at large and preventing crime and serious injury," and that its "ample procedural safeguards" readily withstand a facial constitutional challenge.
The Second Department expressly declined to reach the right to assigned counsel issue. Specifically, citing Gonyo, supra, the Second Department held, "in the instant case, the respondent had retained counsel. Therefore, the question of whether an indigent respondent has a constitutional right to assigned counsel is not in issue in this case." 
In dicta, the Second Department recited the general rule that there is no constitutional right to counsel in civil proceedings, and noted that the Legislature has not exercised its separate authority to create a statutory right to counsel in article 63-A. Citing J.P v W.M., the Second Department also acknowledged that there is an open question as to whether there is a due process constitutional right to counsel in an ERPO hearing when there are pending related criminal charges. However, the Second Department further observed that, "Since CPLR article 63-A contains a severability clause, the potential deprivation of an indigent respondent's right to counsel — if in fact there were such a right — would not be sufficient to conclude that CPLR article 63-A is unconstitutional on its face."
Consistent with the purposes of the statutory savings clause, and consistent with the approach that the courts in New York have historically taken to read necessary procedural requirements into a statute when a contrary interpretation would result in the denial of a fundamental constitutional right [see Matter of Buttonow, supra, 23 NY2d at 393], I hold that the right to assigned counsel at an ERPO hearing must be read into the statute when there are pending related criminal charges.[FN1]

These findings are the product of an independent construction of federal and state constitutional law. As then Judge, later Chief Judge, Lawrence H. Cooke once instructed, "independent construction finds its genesis specifically in the unique language of the due process clause of the New York Constitution as well as the long history of due process protections afforded the citizens of this State and, more generally, in fundamental principles of federalism." [Sharrock v. Dell Buick- Cadillac, Inc., 45 NY2d 152, 159-60 (1978)]. And as retired Chief [*8]Judge Stewart F. Hancock, Jr., observed in his final published work [Hancock, New York State Constitutional Law- Today Unquestionably Accepted and Applied as a Vital and Essential Part of New York Jurisprudence, 77 Albany Law Rev. 1331, 1332 (2014)]:
State constitutionalism. . . is simply the logical and imminently fair doctrine that when a New York court concludes that an individual has rights that are not protected under the federal Constitution, but should be under the New York Constitution, the court will afford that person the greater protection as a matter of fairness and common sense.
Respondent has already been deemed indigent in the pending related criminal proceeding. Based upon my determination that the assignment of counsel is constitutionally mandated in this ERPO proceeding because of that related criminal proceeding, I am assigning counsel to represent him in this ERPO proceeding.
For purposes of continuity of representation, the Court is assigning the Dutchess County Public Defender's Office to provide that representation. If for some reason the Public Defender's Office is unable to accept that assignment, the Dutchess County Assigned Counsel Plan Administrator shall assign an attorney, and the cost of that assigned counsel shall be paid by public funds pursuant to Article 18-B of the County Law.
The foregoing constitutes the Order of this Court.
Dated: March 26, 2024
Poughkeepsie, New York
HON. MICHAEL G. HAYES, A.J.S.C.

Footnotes

Footnote 1:This finding does not extend to Temporary Extreme Risk Protection Order (TERPO) applications, which do not require a hearing, and which may be — and almost always are - filed and decided on an ex parte basis [CPLR §6342].